**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 13-4703**

———————

UNITED STATES OF AMERICA,

             Plaintiff - Appellee,

      v.

CHRISTIAN SWEAT,

             Defendant - Appellant.

———————

Appeal from the United States District Court for the Eastern District of Virginia, at Newport News.  Mark S. Davis, District Judge.  (4:13-cr-00028-MSD-TEM-1)

———————

Submitted:  May 1, 2014               Decided:  May 30, 2014

———————

Before NIEMEYER and DUNCAN, Circuit Judges, and HAMILTON, Senior Circuit Judge.

———————

Affirmed by unpublished per curiam opinion.

———————

Mark Diamond, Richmond, Virginia, for Appellant.  Dana J. Boente, Acting United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia; Jonathan A. Ophardt, Special Assistant United States Attorney, UNITED STATES DEPARTMENT OF JUSTICE, Newport News, Virginia; Meghan Leibold, Third Year Law Student, WASHINGTON UNIVERSITY SCHOOL OF LAW, St. Louis, Missouri, for Appellee.

———————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Christian Sweat (Sweat) appeals his conviction for possession of a firearm by a convicted felon, 18 U.S.C. § 922(g)(1). On appeal, he presses three claims: (1) the district court abused its discretion when it denied, as untimely, his motion to suppress; (2) there is insufficient evidence in the record to support his conviction; and (3) the sentence imposed by the district court is procedurally unreasonable. For the reasons stated below, we affirm.

I

A

Around 11:40 p.m. on February 1, 2013, Newport News Police Officer Joseph Cavanaugh (Officer Cavanaugh) was alone in his marked police cruiser while patrolling 39th Street in Newport News, Virginia. As Officer Cavanaugh proceeded down 39th Street just east of Marshall Avenue, a pickup truck traveled towards him. Because the pickup truck had only one operable headlight, Officer Cavanaugh executed a U-turn and followed the pickup truck onto Marshall Avenue. Officer Cavanaugh activated his blue lights and pulled the pickup truck over just after it turned onto 44th Street.

Officer Cavanaugh approached the pickup truck on the driver's side and noticed three occupants inside. Sweat was the

driver.  While Officer Cavanaugh was explaining to Sweat the reason for the stop, he smelled marijuana.  As a result, he returned to his police cruiser to request an additional officer to assist him with the stop.  After Newport News Police Officer Curt Whittlesey (Officer Whittlesey) arrived on the scene, the two officers approached the pickup truck and asked the three occupants to exit.  Sweat was placed in handcuffs and escorted by Officer Cavanaugh to his police cruiser, where Sweat was instructed to sit on the police cruiser's front bumper.

Officer Cavanaugh began to explain to Sweat what was going to transpire with the stop.  While this was happening, one of the passengers began to struggle with Officer Whittlesey.  Upon seeing the struggle, Officer Cavanaugh left Sweat alone to assist Officer Whittlesey.  The passenger broke away from Officer Whittlesey and fled.  At this point, Officer Cavanaugh turned back toward Sweat and, noticing him beginning to walk away from the police cruiser, ordered him to stop.  In response to this order, Sweat ran from the scene.

Sweat ran down 44th Street, with Officer Cavanaugh in pursuit.  Sweat failed to stop despite multiple demands from Officer Cavanaugh.  When Officer Cavanaugh was approximately five feet behind Sweat, Officer Cavanaugh observed an object fall from Sweat.  From the sound he heard when the object hit the pavement, Officer Cavanaugh immediately knew the object was

- 3 -

a firearm.  Officer Cavanaugh then stopped, picked up the firearm, ejected the magazine, and removed a round of ammunition from the chamber.  Sweat continued to flee.

A few minutes later, Newport News Police Lieutenant Morgen Tietjens (Lieutenant Tietjens), responding to a report that another officer was involved in a foot pursuit, spotted the handcuffed Sweat and apprehended him.  Officer Cavanaugh responded to Lieutenant Tietjens' location, identified Sweat as the person who had dropped the firearm while fleeing, and arrested him.

B

On March 12, 2013, a federal grand jury sitting in the Eastern District of Virginia returned a one-count indictment charging Sweat with being a felon in possession of a firearm. Id.  On April 19, 2013, Sweat entered a plea of not guilty and asked for a jury trial.  On that date, a United States Magistrate Judge set a May 3, 2013 pretrial motions deadline and a June 12, 2013 trial date.  On May 31, 2013, the district court entered an ordering moving the trial date to June 13, 2013.

In the late afternoon of June 12, 2013, Sweat filed an untimely motion to suppress.  During an ensuing telephone status conference that day, Sweat made an oral motion to continue the trial.  According to defense counsel, the motions were the result of a fax he had received earlier that day from Sweat's

- 4 -

mother. The fax contained a letter from a state motor vehicle inspector who asserted he could testify that the headlights on the pickup truck were operable and had not been changed since the pickup truck had been assembled.

In response, the government objected to a continuance because of witness availability issues and objected to holding a suppression hearing immediately before trial because of the impracticality of investigating Sweat's belatedly disclosed assertions of fact. The government also proffered that the pickup truck had been in the control of Sweat's family since it was released from impoundment and noted that a recorded jail call between Sweat and a woman contained an implicit admission that the headlight was not working on the night of Sweat's arrest.

During the telephone status conference, the district court inquired of defense counsel as to why a motion to suppress had not been timely filed. Defense counsel explained that he had determined a suppression motion would be fruitless unless Sweat's claim could be substantiated with some kind of witness testimony, preferably testimony from an independent witness who could verify that the headlight was working on the night of Sweat's arrest. Defense counsel informed Sweat's family of his legal opinion and the time limits governing suppression motions. Having no information concerning an independent witness by the

motions deadline, defense counsel chose not to file a motion to suppress.

In ruling on the motions, the district court concluded that the proffered information did not provide a sufficient basis to warrant a continuance or to consider an untimely motion to suppress. Accordingly, the district court denied both the motion to suppress and the motion for a continuance.

The following day, June 13, 2013, Sweat's jury trial commenced. At trial, the parties stipulated that the firearm recovered by Officer Cavanaugh had not been manufactured in the Commonwealth of Virginia and that Sweat was a convicted felon. Thus, the only issue for the jury was whether Sweat knowingly possessed the firearm. At the close of the government's evidence, Sweat moved for a judgment of acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure, contending that the evidence presented by the government did not establish that he possessed the firearm recovered by Officer Cavanaugh. After the arguments of counsel, the district court denied the motion. On June 14, 2013, the jury returned a verdict of guilty.

Following the preparation of a Presentence Investigation Report (PSR), the district court held a sentencing hearing on September 13, 2013. The district court found that Sweat's total offense level was 16 and that his Criminal History Category was

III, producing an advisory sentencing range of 27 to 33 months' imprisonment under the United States Sentencing Guidelines. After considering Sweat's allocution, the arguments of counsel, and the 18 U.S.C. § 3553(a) factors, the district court sentenced Sweat to 30 months' imprisonment. Sweat noted a timely appeal.

II

Sweat contends that the district court erred in denying, as untimely, his motion to suppress. Under Rule 12 of the Federal Rules of Criminal Procedure, a motion to suppress must be raised prior to trial or by the deadline established by the district court. Fed. R. Crim. P. 12(b)(3)(C), 12(c). A defendant waives the right to file a suppression motion if he fails to file the motion prior to the deadline set by the district court, unless he can establish good cause for the waiver. Fed. R. Crim. P. 12(e). We have found good cause to excuse an untimely motion to suppress where, for instance, the delay in filing the suppression motion was caused by the government's failure to turn over the evidence sought to be suppressed. United States v. Chavez, 902 F.2d 259, 263–64 (4th Cir. 1990).

We will not disturb a district court's denial of an untimely motion to suppress absent clear error. United States v. Ruhe, 191 F.3d 376, 385 (4th Cir. 1999); Chavez, 902 F.2d at

263. Accordingly, we rarely grant relief from the denial of an untimely suppression motion. See Ruhe, 191 F.3d at 386–87 (holding that no good cause was present to raise an untimely suppression issue where the defendant could have with due diligence discovered the information necessary to raise the issue); Chavez, 902 F.2d at 263 (recognizing that appellate courts generally deny relief from the denial of an untimely suppression motion where the motion was made after the court-imposed deadline and the defendant proffered only a "dubious excuse"). After a careful review of the record, we conclude that the district court did not commit error, clear or otherwise, when it denied, as untimely, Sweat's motion to suppress. Both below and in this court, Sweat has failed to set forth good cause under Rule 12(e) for the delay in filing the motion to suppress.

In a related argument, Sweat contends that his trial counsel rendered ineffective assistance when he failed to timely file a motion to suppress. To prove a claim of ineffective assistance of counsel, a defendant must show (1) "that counsel's performance was deficient," and (2) "that the deficient performance prejudiced the defense." Strickland v. Washington, 466 U.S. 668, 687 (1984). In evaluating counsel's performance, we indulge a strong presumption that counsel's performance falls within the wide range of reasonable professional assistance.

Id. at 689.  Further, we must evaluate the reasonableness of counsel's performance within the context of the circumstances at the time of the alleged error, rather than with the benefit of hindsight.  Id. at 690.  To satisfy the second prong of Strickland, a defendant must show a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different.  Id. at 694.

We will address a claim of ineffective assistance of counsel on direct appeal only if counsel's ineffectiveness conclusively appears on the record.  United States v. Baldovinos, 434 F.3d 233, 239 (4th Cir. 2006).  Having thoroughly reviewed the record, we find that ineffective assistance of counsel does not conclusively appear on the record.  Accordingly, we decline to address this claim on direct appeal.


III

Sweat contends that the district court erred by denying his motion for judgment of acquittal under Rule 29 of the Federal Rules of Criminal Procedure.  We review de novo a district court's decision to deny such a motion.  United States v. Smith, 451 F.3d 209, 216 (4th Cir. 2006).  Where, as here, the Rule 29 motion was based on a claim of insufficient evidence, "[t]he verdict of a jury must be sustained if there is substantial

- 9 -

evidence, taking the view most favorable to the Government, to support it." Glasser v. United States, 315 U.S. 60, 80 (1942). Substantial evidence is "evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." United States v. Burgos, 94 F.3d 849, 862 (4th Cir. 1996) (en banc). In assessing whether the record contains substantial evidence, we do not review the credibility of the witnesses, and we assume the jury resolved all contradictions in the witness testimony in favor of the government. United States v. Sun, 278 F.3d 302, 313 (4th Cir. 2002). We consider both circumstantial and direct evidence and "allow the government the benefit of all reasonable inferences from the facts proven to those sought to be established." United States v. Tresvant, 677 F.2d 1018, 1021 (4th Cir. 1982).

In order to convict Sweat under § 922(g)(1), the government had to establish that: (1) he previously had been convicted of a felony; (2) he knowingly possessed a firearm; and (3) the possession was in or affecting interstate or foreign commerce at some point during the firearm's existence. United States v. Moye, 454 F.3d 390, 395 (4th Cir. 2006) (en banc). As noted above, at trial, the parties stipulated as to the first and third elements. Consequently, the second element is the only element in question.

- 10 -

Viewing the evidence in the light most favorable to the government and resolving all contradictions in the testimony in favor of the government, the evidence in the record shows that Sweat tried to flee the stop while wearing handcuffs. Officer Cavanaugh testified that, while Sweat was running, an object fell from Sweat's person and hit the pavement while Officer Cavanaugh was only five feet away from Sweat. Officer Cavanaugh testified that he recognized the object from the sound it made when it hit the pavement and that he picked up the firearm immediately after Sweat dropped it. Sweat was apprehended soon after he dropped the firearm, still wearing handcuffs. From this evidence, a jury could reasonably infer that Sweat knowingly possessed the firearm recovered by Officer Cavanaugh.

IV

Finally, Sweat challenges the procedural reasonableness of his sentence. We review a criminal sentence for reasonableness using an abuse of discretion standard. United States v. McManus, 734 F.3d 315, 317 (4th Cir. 2013); see also Gall v. United States, 552 U.S. 38, 51 (2007).

Under the abuse of discretion standard, we first consider whether the district court committed any significant procedural error, such as improperly calculating the Guidelines range, failing to consider the sentencing factors under § 3553(a), or

failing to adequately explain the sentence. United States v. Allmendinger, 706 F.3d 330, 340 (4th Cir.), cert. denied, 133 S. Ct. 2747 (2013). If the sentence is procedurally reasonable, we then consider its substantive reasonableness, taking into account the totality of the circumstances. Gall, 552 U.S. at 51. We presume that a sentence within a properly calculated Guidelines range is substantively reasonable. United States v. Susi, 674 F.3d 278, 289 (4th Cir. 2012).

In sentencing a defendant, the district court first must correctly calculate the defendant's sentencing range under the Sentencing Guidelines. Allmendinger, 706 F.3d at 340. Next, the district court is required to give the parties an opportunity to argue for what they believe is an appropriate sentence, and the district court must consider those arguments in light of the factors set forth in § 3553(a). Id.

When rendering a sentence, the district court must make and place on the record an individualized assessment based on the particular facts of the case. United States v. Carter, 564 F.3d 325, 328, 330 (4th Cir. 2009). In explaining the sentence, the "sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority." Rita v. United States, 551 U.S. 338, 356 (2007). While a district court must consider the statutory

factors and explain its sentence, it need not explicitly reference § 3553(a) or discuss every factor on the record. United States v. Johnson, 445 F.3d 339, 345 (4th Cir. 2006).

As noted above, the PSR recommended a total offense level of 16 and a Criminal History Category III, which produced an advisory sentencing range of 27 to 33 months' imprisonment under the Sentencing Guidelines. The parties agree that the district court correctly calculated the advisory sentencing range.

After the attorneys presented argument to the district court, Sweat exercised his right to allocution. Of note, during his allocution, Sweat professed his innocence, expressing the opinion that the jury got it wrong because of the presence of numerous inconsistences in the witness testimony that "were not remembered in the case." (J.A. 213).

Prior to imposing sentence, the district court, in a commendably painstaking fashion, considered the § 3553(a) factors. The district court: (1) recounted the nature and circumstances of the § 922(g)(1) offense under § 3553(a)(1); (2) summarized the history and characteristics of Sweat under § 3553(a)(1); (3) discussed the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense under § 3553(a)(2)(A); (4) discussed the need for the sentence imposed to afford deterrence under § 3553(a)(2)(B); (5) discussed the

need for the sentence imposed to protect the public from further crimes under § 3553(a)(2)(C); (6) discussed the need for the sentence imposed to provide needed education or treatment under § 3553 (a)(2)(D); (7) discussed the kinds of available sentences under § 3553(a)(3) and § 3553(a)(4); and (8) discussed the need to avoid sentencing disparities under § 3553(a)(6). The district court explicitly acknowledged Sweat's argument regarding factual disparities at trial and dismissed it because the jury resolved these disparities against him.

After considering all of the relevant § 3553(a) factors, the district court imposed a sentence of 30 months' imprisonment, which fell in the middle of the advisory sentencing range. In reaching this sentence, the district court indicated that it did not see contrition from Sweat, although it had initially considered a sentence at the bottom of the advisory range. According to the district court, a higher sentence was necessary "because I just don't sense that you get it." (J.A. 223).

Sweat argues that his sentence is procedurally unreasonable because the district court increased his sentence, in part, based on the comments he made during his allocution. We reject Sweat's argument. Lack of remorse certainly is a fact that a district court can consider in its evaluation of the § 3553(a) factors. See, e.g., United States v. Cruzado-Laureano, 527 F.3d

231, 237 (1st Cir. 2008) (holding that the defendant's lack of remorse during allocution is an appropriate fact to be considered in evaluating the § 3553(a) factors); United States v. Smith, 424 F.3d 992, 1016-17 (9th Cir. 2005) (same).

To be sure, § 3553(a)(1) states that, in determining the particular sentence to be imposed, the district court shall consider "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). The statute also directs the district court to consider, inter alia, the need for the sentence imposed "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," id. § 3553(a)(2)(A), and the need "to protect the public from further crimes of the defendant," id. § 3553(a)(2)(C). Sweat's refusal to acknowledge that he committed the § 922(g)(1) offense is information that falls well within these guiding provisions, giving relevant insight into his character and raising concerns about his respect for the law and his future conduct.

Sweat also argues that his sentence is procedurally unreasonable because the district court failed to provide an individualized assessment of the applicable § 3553(a) factors. However, our review of the record convinces us that the district court considered the § 3553(a) factors, as noted above in a

- 15 -

commendably painstaking fashion, and rendered an individualized assessment based on the particular facts of this case.

V

For the reasons stated herein, the judgment of the district court is affirmed. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED